# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          )
                            )
            v.              )          Cr. ID No. 1307007770
                            )
KELSEY LANE,                )
                            )
            Defendant.      )

Submitted: May 8, 2014
Decided: May 30, 2014

Kevin Hudson, Esquire
Deputy Attorney General
820 N. French Street, 8TH Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Louis B. Ferrara, Esquire
1716 Wawaset Street
Wilmington, DE 19806
*Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

Defendant Kelsey Lane ("Lane") was arrested on July 10, 2013, and charged with Driving Under the Influence of Alcohol in violation of 21 *Del. C.* § 4177 (the "DUI Offense"); Failure to Have Required Insurance in violation of 21 *Del. C.* § 2118(a) (the "Insurance Offense"); Driving the Wrong Way on a One Way Road, in violation of 21 *Del. C.* § 4121(a), and; Failure to Remain Within a Single Lane in violation of 21 *Del. C.* § 4122(1).

A non-jury trial was held on April 30, 2014. At trial, the Court heard testimony from one witness. At the conclusion of trial, the Court reserved decision. This is the Court's decision after trial.

## PROCEDURAL HISTORY

On December 4, 2013, Lane moved to suppress evidence offered by the State on the basis that the initial detention and/or arrest of Lane was not supported by reasonable articulable suspicion or probable cause. A hearing on Lane's Motion to Suppress was held on January 7, 2014.

At the suppression hearing, the Court heard testimony from two witnesses: Amanda Yeaton ("Yeaton") and Senior Sergeant Keith Sparks ("Sergeant Sparks"). Yeaton, the passenger in Lane's vehicle at the time of the alleged offense, testified that on July 9, 2013, she accompanied Lane to a restaurant in celebration of Lane's birthday. Yeaton testified that she observed Lane drink a margarita, and that she "believe[d]" she observed Lane consume other alcoholic beverages.[1] Despite Yeaton's offer to drive, Lane proceeded to drive the pair home. While driving along Murphy Road towards Faulk Road, the vehicle collided with two road signs.

---

[1] Specifically, Yeaton testified that in addition to the margarita, she was of the belief that Lane also consumed one beer and one shot during the outing.

Sergeant Sparks testified that on the night of July 9, 2013, he was on Wilson Road approaching Faulk Road when he came upon a one-vehicle accident. When he approached the vehicle, the passenger, Yeaton, stated "I told her not to drive, she was too drunk." Sergeant Sparks identified Lane as the driver of the vehicle, and testified that he placed her in the back of his vehicle while he waited for an officer from the Delaware State Police to respond to the scene and assume the investigation.

The Court ultimately denied Lane's Motion to Suppress, and the matter was scheduled for trial.[2]

## FACTS

A non-jury trial was held on April 30, 2014. At the onset of trial, the State moved into evidence the non-hearsay testimony and evidence presented at the January 7, 2014 hearing on the Motion to Suppress.

The sole witness to testify at trial was Master Corporal Jerold Huber ("Corporal Huber"). Corporal Huber testified that on July 10, 2014, he was on duty and was dispatched to an accident at the intersection of Faulk and Wilson roads. Upon arrival, Corporal Huber observed skid marks on the westbound side of Wilson Road, which traveled back to the eastbound lane. Corporal Huber observed Lane's vehicle resting off the road on the property of a landscaping business, faced in the direction opposing traffic. Corporal Huber observed two individuals at the scene; one located next to the vehicle and one sitting in Sergeant Sparks' vehicle. Corporal Huber identified the latter individual as Lane.

After speaking with Sergeant Sparks, Corporal Huber removed Lane from the back of Sergeant Sparks' vehicle. As he did so, he smelled a strong odor of alcohol and observed that

---

[2] See State v. Lane, 2014 WL 904785 (Del. Com. Pl. March 10, 2014).

Lane's eyes were bloodshot and glassy and her pupils were dilated. Corporal Huber testified that Lane needed assistance exiting the vehicle because she could not maintain her balance.

Corporal Huber moved Lane out of the roadway to administer field sobriety tests. Prior to the commencement of the field sobriety tests, Lane, who was crying, stated "just arrest me, I'm drunk, it's my fault."

Corporal Huber first administered the alphabet test, and Lane struggle with the test "jump[ing] around" with the letters. Corporal Huber also administered the walk-and-turn test[3] and the one-leg stand test,[4] both of which Lane performed poorly.[5] Corporal Huber observed five clues on the walk-and-turn test and four clues on the one-leg stand test.[6] Corporal Huber testified that throughout the encounter, Lane repeatedly stated "it's my fault, just arrest me for DUI."

After she performed poorly on the field sobriety tests, Corporal Huber transported Lane to the police station. When the State sought to introduce evidence pertaining to the calibration of the intoxilyzer machine, Lane objected. In *voir dire* examination of Corporal Huber, it was established that he had not witnessed or possessed any knowledge of the calibration of the intoxilyzer. As a result, the State conceded that it could not establish a foundation for the admission of the intoxilyzer results.

---

[3] Corporal Huber instructed Lane to walk nine steps forward heel-to-toe and nine steps back heel-to-toe. During the test, Lane started too soon, kept losing her balance, and repeatedly asked what she was supposed to do. After six steps forward, Lane nearly fell.

[4] Lane swayed and put her foot down four times within ten seconds. Corporal Huber testified that if a person puts their foot down three times in ten seconds, he ceases the test.

[5] Officer Huber also administered the HGN test, however, Lane objected to the admissibility of the HGN test into evidence at trial. The State conceded that the HGN test should not be considered by the Court because Corporal Huber lacked the requisite training.

[6] Corporal Huber testified that he believed four clues constituted a blood alcohol concentration of .01 in 68% of people on the walk-and-turn test, and he testified that he could not remember how many clues equate to a high probability of intoxication on the one-leg stand test.

4

The State thereafter proceeded on an impairment theory of DUI available under 21 *Del. C.* § 4177. It is the State's position that, based on the evidence presented at trial, Lane was under the influence of alcohol when she operated her vehicle. It is Lane's position that the testimony presented at trial does not establish that Lane operated the vehicle. Lane further argued that Corporal Huber lacked knowledge of the number of clues needed to constitute a failure under the field sobriety tests, thus his ability to properly score the tests was compromised.

## DISCUSSION

### A. The DUI Offense

For a defendant to be found guilty of driving while under influence of alcohol in violation of 21 *Del. C.* § 4177, the State must prove beyond a reasonable doubt the following two elements: (1) that the defendant drove a motor vehicle at or about the time and place charged, and; (2) that the defendant was under the influence of alcohol while he drove the motor vehicle.[7]

### 1. The Evidence Presented Was Sufficient to Establish that Defendant was Driving.

The first element may be proven beyond a reasonable doubt by circumstantial evidence and the defendant's statements.[8] Lane argued that the Court cannot consider the testimony of Officer Sparks presented at the motion to suppress. Absent this testimony, Lane contends, the State cannot establish that Lane was the driver of the vehicle.

The Court finds Lane's argument to be without merit. At the start of trial, the State moved into evidence all non-hearsay testimony. This included the testimony of Officer Sparks as well as the testimony of Yeaton. Officer Sparks identified Lane as the driver of the vehicle, and Yeaton testified that, at Lane's own insistence, Lane was driving at the time of the accident.

---

[7] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).
[8] *See Coxe v. State*, 281 A.2d 606, 608 (Del. 1971).

5

In addition, the circumstantial evidence and the statements of Lane, which were testified to at trial by Corporal Huber, are sufficient for the Court to find that Lane was the driver of the vehicle. Corporal Huber testified that he observed two individuals at the scene; one who was standing by the crashed vehicle and one in the back of Officer Sparks' vehicle. Corporal Huber identified the individual in the back of Officer Sparks' vehicle as Lane. Corporal Huber testified that, after speaking with Officer Sparks, he removed Lane from the vehicle and commenced administration of field sobriety tests. Corporal Huber testified that Lane first stated "just arrest me, I'm drunk, it's my fault," and later reiterated "it's my fault, just arrest me for DUI." Lane's statement serves as strong circumstantial evidence that she was the driver. By admitting that she should be arrested for *driving* under the influence, Lane affirmed that she was driving the vehicle. Based on the testimony of Corporal Huber, Officer Sparks, and Yeaton, the Court finds that the State has met its burden of proving beyond a reasonable doubt that Lane drove the vehicle at the time and place charged.

**2. Defendant was Under the Influence of Alcohol While Driving.**

Mere consumption of alcoholic beverages does not render a person "under the influence."[9] Rather, the State must show "that the person has consumed a sufficient amount of alcohol to cause the driver to be less able to exercise the judgment and control that a reasonably careful person in full possession of his or her faculties would exercise under like circumstances . . . [w]hat is required is that the person's ability to drive safely was impaired by alcohol."[10]

Lane argues that Corporal Huber's ability to score the field sobriety tests was diminished by his lack of knowledge concerning the number of clues needed to "fail" tests. The Court finds this contention to be inapposite. There is nothing in the record to indicate that Officer Huber

---

[9] *Lewis*, 626 A.2d at 1355.
[10] *Id.*

6

lacked the ability to properly score the test. Officer Huber testified that he could not recall the number of clues requisite for a "failure." However, Officer Huber offered credible testimony as to the number of clues Lane demonstrated on each test, and he testified about the percentage probability of intoxication based on the number of clues exhibited.

Based on the testimony adduced at the suppression hearing and at trial, the State proved impairment beyond a reasonable doubt. The evidence in the record shows that Lane: (i) consumed alcohol prior to driving the vehicle; (ii) portrayed physical signs of intoxication, including bloodshot glassy eyes, dilated pupils, trouble maintaining balance, and an odor of alcohol; (iii) did not satisfactorily perform the field sobriety tests administered, and; (iv) made statements affirming her intoxication. Additionally, in finding that Lane's ability to drive safely was impaired by alcohol, the Court considered the nature of the accident; Lane swerved between lanes before colliding with a stationary traffic sign. Accordingly, the Court finds that the State has proven beyond a reasonable doubt that Lane was under the influence of alcohol when she drove the motor vehicle.

## B. The Remaining Offenses

### 1. The Insurance Violation

Lane was charged with Failure to Have Required Insurance in violation of 21 *Del. C.* § 2118(a). Officer Huber testified that Lane's insurance card had expired in 2012. When asked if he requested proof of insurance from Lane, Officer Huber responded "I found one inside the car." In closing argument, counsel for Lane indicated that he had proof of Lane's insurance but had misplaced it. Counsel requested an opportunity for later submission of the proof of insurance, which the State opposed. The Court reserved decision. On May 8, 2014, counsel for

7

Lane submitted to the Court a copy of Lane's insurance which shows that she was properly insured at the time of the accident on July 9, 2013.

The Court finds that the State failed to prove beyond a reasonable doubt that Lane was in violation of 21 *Del. C.* § 2188(a). Instead, the evidence presented at trial established only that Officer Huber was unable to independently locate Lane's current insurance card. There is nothing in the record to suggest that Lane was asked to produce proof of insurance at the time of the alleged offense. Furthermore, the supplemental submission by Lane's counsel shows that Lane was in compliance with 21 *Del. C.* § 2188(a) at the time of the alleged offense.[11] Accordingly, the Court finds that Lane is not guilty of the Insurance Violation.

**2. The Traffic Charges**

Based on the evidence in the record, the State has proven beyond a reasonable doubt that Lane is guilty of Driving the Wrong Way on a One Way Road, in violation of 21 § *Del. C.* 4121(a), and Failure to Remain Within a Single Lane in violation of 21 *Del. C.* § 4122(1).

## CONCLUSION

The Court finds that the State has proven guilt beyond a reasonable doubt as to the DUI Offense, Driving the Wrong Way on a One Way Road, and Failure to Remain Within a Single Lane. Thus, the Court finds Defendant Kelsey Lane **GUILTY** on those counts. The Court finds that the State has not proven guilt beyond a reasonable doubt as to the Insurance Offense. Thus, the Court finds Defendant Kelsey Lane **NOT GUILTY** on the Insurance Offense.

---

[11] The insurance card submitted by counsel indicates that Lane had an automobile insurance policy effective April 5, 2014 through October 5, 2013.

This Judicial Officer shall retain jurisdiction of this case and will schedule it forthwith for sentencing.

**IT IS SO ORDERED THIS 30th DAY OF MAY 2014.**

The Honorable Sheldon K. Rennie,
Judge